Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**TONJA V. KINDER**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRYCE LEIGHTON,                )
                              )
    Appellant-Defendant,       )
                              )
        vs.                )     No. 53A04-1303-CR-106
                              )
STATE OF INDIANA,             )
                              )
    Appellee-Plaintiff.        )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Kenneth G. Todd, Judge
Cause Nos. 53C03-1007-FB-693 and 53C03-1009-FB-875

**October 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

When Bryce Leighton got drunk and disorderly at a party, his friends called the police and had him removed from the home. Instead of calling it a night, Leighton returned to the home and stole four guns and a car. While driving the stolen car, Leighton collided with a taxi driven by the single mother of a three-year-old son, killing her. His alcohol concentration equivalent ("ACE") was .17. The State charged Leighton with six counts. He agreed to plead guilty to class B felony causing death when operating a motor vehicle with an ACE of .15 or more, class D felony auto theft, and class D felony theft, in exchange for dismissal of the remaining counts. The trial court sentenced him to fourteen and a half years for the class B felony, to be served consecutive to concurrent terms of one and a half years for each of the class D felonies, for an aggregate sentence of sixteen years.

On appeal, Leighton contends that his sentence is inappropriate in light of the nature of the offenses and his character. We conclude that Leighton has failed to carry his burden of establishing inappropriateness and therefore affirm his sentence.

**Facts and Procedural History**

On the evening of July 19, 2010, twenty-one-year-old Leighton drank beer and whiskey at a house party in Monroe County. Leighton's friends called the police because he "was irate and wouldn't stop drinking" and was "causing a disturbance at the party." Tr. at 11-12. Police arrived and escorted Leighton off the property. He later returned to the home and stole four guns and a car. Around 6:30 the next morning, while driving the stolen car, Leighton attempted to pass another vehicle near the crest of a hill. He crossed the centerline

2

and collided with a taxi driven by Gwendolyn Sanders. Sanders was killed and her body so badly mutilated that her stepfather was told, "[Y]ou don't want to see her." *Id*. at 27. Leighton had no recollection of either the thefts or the collision because he had "so much to drink that [he was] in a state of alcoholic black out [sic]." *Id*. at 12. His ACE was .17.

The State ultimately charged Leighton with five counts under cause number 53C03-1007-FB-693 ("cause 693"): (I) class B felony causing death when operating a motor vehicle with an ACE of .15 or more; (II) class C felony causing death when operating a motor vehicle while intoxicated; (III) class C felony reckless homicide; (IV) class D felony auto theft; and (V) class C misdemeanor knowingly or intentionally operating a motor vehicle without ever receiving a license. The State also charged Leighton with the following two counts under cause number 53C03-1009-FB-875 ("cause 875"): (I) class B felony burglary; and (II) class D felony theft. In December 2012, Leighton agreed to plead guilty to counts I and IV in cause 693 and count II in cause 875 in exchange for dismissal of the remaining charges. Sentencing was left to the trial court's discretion, but the sentence for count I was to be served consecutive to the sentence for count IV, which would be served concurrent with the sentence for count II.

At the sentencing hearing on February 12, 2013, the trial court accepted the plea agreement, heard argument from both sides, and pronounced sentence as follows:

> The record should reflect that in considering the disposition of this case, I've taken in to [sic] consideration the nature, and circumstances of the offense, the defendant's past criminal history and other personal matters related to the defendant. As noted by [defense counsel,] Mr. Leighton it would appear to me that you did in fact have what [defense counsel] described as some what [sic] troubled childhood. It is apparent to me that you did not benefit from good

3

role models, in any respects. There's a history of alcohol abuse in your family and unfortunately a history of criminal conduct by several family members as to one degree or another. That's material and understanding how you got to where you are. Although it would be difficult for me to – and I suppose it's a matter of some mitigation, although not of great weight in determining the disposition in this case. As noted by [defense counsel] you did in fact enter pleas of guilty this [sic] saving the State the necessity of trying your case. I would consider that a matter of some mitigation. You did participate in available programing in the jail which you believed would benefit you in terms of dealing with your substance abuse, that is to your credit. And you have expressed remorse here which I certainly find to be genuine and I accept as a sincere expression of you [sic] concerns. Unfortunately none of those matters can change the circumstances that bring us here to day [sic]. In considering the nature and circumstances of the offense I would note that the victim left a dependent [a three-year-old son] who will no longer have a mother to care for him. I would note that you committed the offense while driving a stolen car from the scene of the other crimes … to which you've pleaded guilty. And that you were operating the vehicle not merely with a prohibited level of blood alcohol, but recklessly and with a disregard of the harm that that posed to others. Those factors bearing upon the commission of the offense are aggravating to a material degree. Would note that further that you do have … a history of criminal behavior. Although it is fairly minimal as noted by [defense counsel]. Disregarding those cases, or that case that has been dismissed, there was the informal adjudication of illegal consumption [in 2005] which is material at least in understanding long you've abused alcohol. The other offense [class B misdemeanor] Battery is really of little weight in considering the disposition of this case. It is of considerable concern to me the history of misconduct you have while incarcerated. [Defense counsel] said that there 2 [sic] misconduct reports, that's 3 by my count and 2 of those at least were major and one as noted by [the prosecutor] involved the … fermentation of fruit to produce alcohol which would allow you to become intoxicated. That is of significant concern to the Court.

*Id*. at 55-58. The court sentenced Leighton to fourteen and a half years for the class B felony, to be served consecutive to concurrent terms of one and a half years for each of the class D felonies, for an aggregate sentence of sixteen years. Leighton now appeals. Additional facts will be provided as necessary.

4

## Discussion and Decision

Leighton asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our supreme court has explained that "[t]he principal role of appellate review should be to attempt to leaven the outliers" but "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. "[T]he question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. 2008). "The defendant has the burden of persuading us that his sentence is inappropriate." *Id*. at 267.

"When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). The sentencing range for a class B felony is six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. The sentencing range for a class D

felony is six months to three years, with an advisory sentence of one and a half years. Ind. Code § 35-50-2-7(a).

> One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence.

*Johnson*, 986 N.E.2d at 856.

Regarding his class B felony conviction, Leighton argues that although he "does not now wish to minimize this tragedy, … this is not an especially egregious form of the crime of Causing Death While Operating with an ACE of 0.15 or More, but rather is the typical type of this crime." Appellant's Br. at 9. We disagree. Leighton was driving drunk in a stolen car when he attempted to pass another vehicle near the crest of a hill. He slammed into Sanders's taxi and killed her, mutilating her body so badly that her stepfather was told not to look at it. Leighton's ACE was .17, and he did not remember the accident because he was in an alcoholic blackout. Sanders, who was a single mother, left behind a three-year-old son, who had lived with her and her mother and stepfather. All three were devastated by Sanders's death. After Sanders's death, her ex-husband obtained custody of their son, and his grandparents are able to see him only twice a month for twenty-four hours at a time. The nature of the offense committed by Leighton is significantly more egregious than the "typical" offense contemplated by the legislature and amply supports a sentence above the advisory term. Leighton received the advisory sentence for his class D felony theft and auto

6

theft convictions, and he offers nothing to suggest that this was inappropriate based on the nature of those crimes.

The foregoing facts do not speak well of Leighton's character. He pled guilty and expressed remorse for his crimes, and his criminal history is minor, but his 2005 informal adjustment for illegal alcohol consumption suggests that his problems with alcohol are longstanding. Leighton's family has a history of alcohol abuse, but there is no evidence that he attempted to seek treatment until after he killed Sanders. Significantly, even after he caused Sanders's death, Leighton was caught with fermented fruit and an elevated alcohol level while in jail. He was also disciplined for hitting a correctional officer with a t-shirt and trafficking with another inmate. In sum, Leighton has failed to persuade us that his sentence is inappropriate in light of the nature of the offenses and his character. Therefore, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.